**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | Case No. 24-cr-70-CJW |
| Plaintiff, | | |
| vs. | | |
| | | **REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS** |
| SHANE ROBERT MCDOWELL, | | |
| Defendant. | | |

———————————

**TABLE OF CONTENTS**

<u>Page</u>

I.    *INTRODUCTION* ........................................................................... 2

II.    *FINDINGS OF FACT* .................................................................... 4

III.    *DISCUSSION* ............................................................................. 7

    A.    *Parties' Arguments* ............................................................ 7

    B.    *Analysis* ............................................................................ 11

        1.    *Law Enforcement had probable cause to stop and search the vehicle* ................................................................. 11

            a.    *Relevant law* ........................................................ 12

            b.    *Application* .......................................................... 14

        2.    *Does Defendant have standing to challenge the search?* .......... 15

            a.    *Relevant law* ........................................................ 15

1

   *b.*  *Application* ..................................................................**17**

  *3.*  *Was the search warrant valid?*..............................**19**

   *a.*  *Relevant law* ...............................................**19**

   *b.*  *Application* ..................................................**23**

  *4.*  *Did the CS consent to the search?* ......................**29**

   *a.*  *Relevant law* ...............................................**29**

   *b.*  *Application* ..................................................**30**

  *5.*  *The good faith exception under* **Leon** ...............**32**

   *a.*  *Relevant law* ...............................................**32**

   *b.*  *Application* ..................................................**34**

  *6.*  *The inevitable discovery exception* .....................**35**

   *a.*  *Relevant law* ...............................................**35**

   *b.*  *Application* ..................................................**35**

  *7.*  *Defendant's Statements* ....................................**36**

  *8.*  *Summary*...........................................................**37**

*IV.*  *CONCLUSION* ...............................................................**38**

## I.  INTRODUCTION

On August 21, 2024, the Grand Jury returned an Indictment charging Defendant with one count of Distribution of a Controlled Substance in violation of 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(A) and one count of Distribution of a Controlled

Substance in violation of 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(C). (Doc. 3.) The matter before me is Defendant's motion to suppress. (Doc. 24.) The motion was filed October 15, 2024, and contained an inventory of items to be suppressed. (*Id*.) The Government timely filed a response on October 22, 2024. (Doc. 31.) The parties filed post-hearing briefs on November 8, 2024. (Docs. 37 and 38.) The Honorable C.J. Williams, Chief United States District Court Judge, referred the motion to me for a Report and Recommendation. I held a hearing on the motion on October 29, 2024. (Doc. 36.)

The motion arises from the search of a vehicle on February 28, 2024, in which Defendant was a passenger. Defendant moves to suppress any evidence obtained from the allegedly unlawful search. (Doc. 24.) Evidence he seeks to suppress includes: controlled substances and any statements made post-seizure of the controlled substances.

At the hearing, the following Government's Exhibits were admitted without objection:

1. Muscatine County Drug Task Force Transaction Report #1;
2. Muscatine County Drug Task Force Transaction Report #2;
3. Muscatine County Drug Task Force Search Warrant/Traffic Stop Report #1;
4. Muscatine County Drug Task Force Transaction Report #3; and
5. Cedar Rapids Police Department Incident/Investigation Report.

The following Defendant's Exhibits were also admitted without objection:

A. Search Warrant Application dated February 28, 2024;
B. Search Warrant dated February 28, 2024;
C. Cedar Rapids Police Department Incident/Investigation Report; and
D. Cedar Rapids Police Officer Brand's Supplement to Report.

3

The Government called Muscatine County Sheriff Detective Tanner Bohling[1] and Cedar Rapids Police Officer Austin Bailey.[2] I found both witnesses credible. For the following reasons, I respectfully recommend that the District Court **deny** Defendant's Motion to Suppress.

## II. FINDINGS OF FACT

Detective Bohling testified that the Muscatine County Drug Task Force employed a confidential source ("CS") as part of its investigation of Defendant. The CS contacted the Drug Task Force seeking release from jail in exchange for cooperation in drug investigations. In the initial meeting with the CS, law enforcement inquired about the CS's sources for drugs, the quantity of drugs the CS's sources sold, and the price of the drugs. Law enforcement also inquired whether the CS would be willing to conduct controlled purchases of drugs for the Drug Task Force. Law enforcement discussed the procedures for a controlled drug purchase with the CS, inquiring whether the CS would be willing to consent to a vehicle search before and after every transaction, be willing to consent to a full body search of the CS's person before and after every controlled transaction, and agree to wear a body transmitter to allow law enforcement to listen to the controlled transaction. The CS agreed to these procedures and signed documentation to that effect. The CS also acknowledged that the CS would be working for law enforcement at law enforcement's direction.

On February 5, 2024, the CS was involved with a controlled transaction. After a briefing on the controlled transaction, the CS's person was searched and the CS's vehicle

---

[1] Detective Bohling is employed by the Muscatine County Sheriff's Office and is currently assigned to the Muscatine County Drug Task Force.

[2] Officer Bailey has been employed by the Cedar Rapids Police Department for four years. He is currently assigned as a patrol officer, but at the time of the traffic stop in this case he was assigned to the Police Community Action Team, performing proactive police work with an emphasis in reducing gun violence in Cedar Rapids, Iowa.

was searched. No contraband was found in either search. During the controlled transaction, the CS purchased methamphetamine from Defendant. After the controlled transaction was complete, law enforcement directed the CS to meet them at a discrete location so that law enforcement could take possession of the methamphetamine and search the CS's person and the CS's vehicle. Detective Bohling testified that the CS knew before the controlled drug purchase that the CS's person and the CS's vehicle would be searched before and after the controlled transaction. (Bohling Hr'g Test. at 13.) On February 13, 2024, a second controlled transaction was conducted between the CS and Defendant. Detective Bohling testified that the same procedures were employed and both the CS's person and the CS's vehicle were searched before and after the controlled transaction conducted on February 13, 2024.

On February 28, 2024, a third controlled purchase involving the CS and Defendant was arranged. In the law enforcement briefing for the controlled transaction, officers involved in the investigation were informed that, following the controlled transaction, a traffic stop would be conducted on the CS's vehicle while the CS and Defendant were traveling back to Cedar County from Linn County. The CS was not informed of the planned traffic stop. As with the other two controlled transactions, both the CS's person and the CS's vehicle were searched prior to the controlled drug purchase on February 28, 2024. Law enforcement also told the CS via text prior to the controlled transaction to place the methamphetamine obtained in the rear of the vehicle underneath the spare tire compartment.

The CS and Defendant traveled from Tipton, Cedar County, Iowa to Cedar Rapids, Linn County, Iowa to purchase methamphetamine from Defendant's source. The CS provided Defendant $3500. In Cedar Rapids, Defendant contacted his source and met with him in the parking lot of a Dollar Tree store. In the parking lot, Defendant exited the CS's vehicle and entered the source's vehicle. After approximately one minute,

the source exited his vehicle and went into the Dollar Tree store and Defendant exited the source's vehicle and returned to the CS's vehicle. Defendant told the CS he had received only 15 ounces of methamphetamine because the source kept one ounce for himself. The CS and Defendant drove to a nearby car wash and the CS moved the methamphetamine to the rear of the vehicle under the spare tire as instructed by Detective Bohling. (Gov. Ex. 4; Bohling Hr'g Test. at 19-21.) Law enforcement surveilled the February 28, 2024 controlled transaction and also heard the controlled transaction via the wire the CS was wearing. (*Id.*)

While the CS and Defendant were traveling back to Cedar County, Cedar Rapids Police officers conducted a traffic stop on the CS's vehicle, a 2010 Mercedes SUV.[3] The CS's vehicle was searched, and law enforcement found the methamphetamine in the rear of the vehicle under the spare tire, where Detective Bohling had directed the CS to place it.

Officer Bailey was part of the law enforcement team investigating Defendant on February 28, 2024. Prior to the controlled transaction, Officer Bailey attended a safety briefing. At the briefing, Officer Bailey was provided a search warrant for Defendant's person and any vehicle that Defendant was traveling in. Officer Bailey was also briefed regarding the controlled drug purchase involving Defendant that would be taking place later that day. Officer Bailey's primary role in the investigation was to conduct a traffic stop on the CS's vehicle following the controlled transaction. Officer Bailey was informed that Defendant would be in the CS's vehicle, and he was given a description of the CS's vehicle. Further, Officer Bailey was provided a walkie-talkie so that he could both communicate with investigators who were conducting surveillance of the controlled transaction and hear the communications among the investigators. Thus, Officer Bailey

---

[3] The traffic stop will be addressed in further detail below.

heard discussion of the controlled drug purchase that occurred in the Dollar Tree parking lot and the drugs being moved to the rear of the CS's vehicle. Therefore, prior to the traffic stop, Officer Bailey knew that a drug deal had occurred and knew specifically where in the CS's vehicle the drugs were located. (Bailey Hr'g Test. at 36-37.)

After the controlled transaction was completed and the drugs were moved to the rear of the CS's vehicle under the spare tire, Officer Bailey conducted a traffic stop on the CS's vehicle. Officer Bailey spoke with the CS who admitted being a barred driver. Officer Bailey's partner spoke with Defendant who was a passenger in the CS's vehicle. After other investigators arrived on the scene, Officer Bailey joined his partner in speaking with Defendant. Defendant was asked to exit the CS's vehicle and was placed in handcuffs. Defendant's person was searched and then Officer Bailey explained to Defendant that he had a warrant to search his person and any vehicle he was riding in. The CS's vehicle was searched, and officers found the methamphetamine in the rear of the vehicle under the spare tire. Officer Bailey testified that, even without the search warrant, he had probable cause to stop and search the vehicle based on the other officers' surveillance of the drug deal in the Dollar Tree parking lot, the information overheard on the CS's wire, and knowing the exact location of the drugs in the CS's vehicle. (*Id.* at 39-40.) Officer Bailey also testified that the CS's vehicle was not stopped because of a traffic violation, and he could not remember if he knew the CS was barred from driving before the stop was made.

### III. DISCUSSION

#### A. Parties' Arguments

Defendant argues that "the portion of the search warrant for any vehicle in which [Defendant] may be found was issued without probable cause." (Doc. 24-1 at 4.) Specifically, Defendant argues that:

7

There was no probable cause to believe that any contraband or other relevant evidence would be found in "Any vehicle that [Defendant] is found to currently or immediately before had been driving or riding it." That portion of the Warrant is not limited to any specific vehicles previously associated with [Defendant]. It is not limited to vehicles found in any particular place or at any particular time. It is not limited to vehicles owned or operated by any other specific person.

The Warrant authorizes law enforcement to stop any vehicle at any time that [Defendant] is driving or is a passenger within, with nothing further required. [Defendant] could be driving or be a passenger in a myriad of vehicles for a myriad of reasons. Further, the black 2010 Mercedes Benz SUV that [Defendant] was a passenger in at the time of the traffic stop is not mentioned anywhere in the Application as a vehicle possibly associated with [Defendant] or with any drug or other illegal activity.

(*Id.* at 7-8.) Defendant maintains that the "Application for the Search Warrant did not provide probable cause to allow law enforcement to stop any vehicle which [Defendant] was driving or riding as a passenger." (*Id.* at 9.) Defendant also argues that the "search warrant was limited to items found in Cedar County" and "execution [of the search warrant] in Linn County was outside the scope of the warrant." (*Id.*) Finally, Defendant argues that incriminating statements made by Defendant after being taken into custody and transported to the Cedar Rapids Police Department "must be suppressed as fruit of the poisonous tree." (*Id.* at 11-12.)

In his post-hearing brief, Defendant argues that he has standing in this matter "because the search was based on the warrant, not any traffic violation committed by the driver of the vehicle." (Doc. 38 at 2.) Specifically, Defendant argues that:

It is undisputed in the evidence that the stop of the vehicle in which [Defendant] was a passenger and resulting search was because of the search warrant, particularly the portion of the warrant that authorized the search of any vehicle that [Defendant] was driving or was a passenger in and the search of [Defendant's] person. Officer Austin Bailey testified that he and his partner stopped the vehicle because of the warrant. . . . They did not

observe any traffic violation that would have justified a traffic stop. Accordingly, without [Defendant's] presence in the vehicle to trigger that portion of the warrant, the vehicle would not have been stopped and searched. The warrant was aimed at [Defendant], it was not aimed at the driver of the vehicle.

(*Id.* at 3.) Defendant acknowledges that he "has been unable to locate any cases which discuss traffic stops based on a warrant similar to the warrant at issue in this case," but argues that because "the warrant pertained to [Defendant] and any vehicle in which he was driving or riding in, it is logical to conclude that [Defendant] has standing to challenge the search based on the warrant." (*Id.* at 4-5.)

Defendant also argues, contrary to the Government's position that the CS consented to the search based on the CS's general assent as a CS to the CS's vehicle being searched pre- and post-controlled transactions, "there is no evidence that the [CS], the driver of the vehicle, consented to the search" related to the traffic stop on February 28, 2024. (*Id.* at 5.) Defendant points out that the CS "had no knowledge that the vehicle would be stopped by Cedar Rapids Police Officers and the vehicle searched at that time in the presence of [Defendant]." (*Id.*) Defendant contends that, "[t]o the extent that there is an argument that the [CS] impliedly consented to a search of her vehicle at the conclusion of the controlled buy, there was no evidence that her consent extended to a search as part of an unannounced traffic stop and in the presence of one of the targets of the controlled buy." (*Id.* at 6.)

Further, Defendant argues that "the stop of the vehicle and resulting search were because of the warrant, not because of any claim of probable cause based on the suspected controlled buy." (*Id.* at 7.) Defendant also asserts that "execution of the search warrant in Linn County was not a 'technical violation.'" (*Id.* at 8.) Defendant maintains that the "plain language of the warrant did not encompass property, including contraband, outside of Cedar County." (*Id.* at 8-9.) Finally, Defendant argues that neither the *Leon* good

9

faith exception nor the inevitable discovery exception apply in this matter. (*Id.* at 10-13.)

The Government argues that Defendant lacks standing to challenge the search of the CS's vehicle. (Doc. 35 at 13.) The Government maintains that Defendant was a passenger and had no expectation of privacy in the CS's vehicle. (*Id.*) Next, the Government argues that "even if Defendant had standing, and assuming the search warrant was defective, officers had probable cause and consent to stop and search [the CS's] vehicle." (*Id.* at 14.) Specifically, the Government argues that "[a]fter observing defendant meet with his source of supply and observing and overhearing defendant distribute fifteen ounces of methamphetamine to [the CS], officers had probable cause to conduct a traffic stop of [the CS's] vehicle and to search it." (*Id.*)

The Government also argues that "[d]uring the controlled purchase, [the CS] was acting at the direction of law enforcement and a reasonable officer would believe that [the CS] consented to a traffic stop of [the CS's] vehicle and a search of it." (*Id.* at 17.) Specifically, the Government points out that the February 28, 2024 controlled transaction was the CS's third controlled drug purchase and during the first two controlled transactions, the CS consented to a strip search and a search of the CS's vehicle before and after both controlled drug purchases. Similarly, on February 28, 2024, the CS consented to a strip search and search of the CS's vehicle prior to the controlled transaction. (*Id.* at 18.) The Government maintains that "[a]t the time of the February 28 traffic stop, [the CS] was acting on behalf of law enforcement, and, given the history of searches of [the CS] and his/her vehicle and [the CS's] understanding of the operating procedure, a reasonable officer would believe that [the CS] consented to a traffic stop and search of his/her vehicle to effectuate the conclusion of the controlled purchase." (*Id.*)

10

Further, the Government argues that "even if Defendant had standing, the search warrant was valid, and, if not, the exclusionary rule is not appropriate." (*Id.*) First, the Government contends that "the search warrant complied with the Fourth Amendment." (*Id.* at 19.) The Government asserts that the "search warrant affidavit established that defendant was a long-time drug trafficker, and he had utilized different vehicles for drug-related activities." (*Id.*) Thus, the Government maintains that there was "probable cause to believe that contraband or any other evidence would be found in any vehicle defendant was in, or had immediately exited, based upon his drug trafficking activities." (*Id.* at 22.) Second, the Government asserts that "a technical violation in the execution of the search warrant is not a Fourth Amendment violation." (*Id.* at 23.) The Government maintains that "[w]hile defendant is correct that the warrant was limited to certain property in 'Cedar County,' and it was executed in Linn County . . . that is a technical violation and not a basis for suppression." (*Id.* at 25.) Third, the Government argues that the *Leon* good faith exception to the exclusionary rule applies in this case. (*Id.* at 25-27.) The Government also argues that "the inevitable discovery exception to the exclusionary rule applies" in this matter. (*Id.* at 27.) The Government maintains that "the Court should not exclude the evidence seized from [the CS's] vehicle as, if the search would not have occurred, investigators would have seized the methamphetamine in Cedar County after [the CS] dropped defendant off at his residence." (*Id.*)

**B.      Analysis**

**1.      Law Enforcement had probable cause to stop and search the vehicle.**

While this case presents interesting but possibly academic questions, I recommend the Court first focus on the obvious conclusion that may resolve the matter. While I will address the alternative bases for my recommendation (e.g., Defendant's standing (or lack of it), the CS's consent, the viability of the warrant, etc.), the one inescapable conclusion is that the law enforcement officers who planned and monitored a controlled purchase of

methamphetamine had probable cause to stop and search the vehicle which they had every reason to believe contained that methamphetamine.

### a. Relevant law

"A law enforcement officer may conduct an investigative stop of a vehicle when he [or she] has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *United States v. Pounds*, 70 F.4th 1106, 1108 (8th Cir. 2023) (quoting *United Sates v. Cortez*, 449 U.S. 411, 417-18 (1981)); *see also United States v. Fields*, 832 F.3d 831, 834 (8th Cir. 2016) ("A police officer 'may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.'") (Quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). Courts consider the "totality of the circumstances to determine whether an officer has a particularized and objective basis to suspect wrongdoing." *Pounds*, 70 F.4th at 1108 (citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). "When a team of law enforcement officers is involved in an investigation, the issue is whether all the information known to the team provided 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the investigative stop." *United States v. Collins*, 883 F.3d 1029, 1032 (8th Cir. 2018) (per curiam) (quoting *United States v. Winters*, 491 F.3d 918, 921 (8th Cir. 2007), in turn quoting *United States v. Robinson*, 119 F.3d 663, 666 (8th Cir. 1997)).

Warrantless searches are *per se* unreasonable, with a few well-established exceptions. *United States v. Kennedy*, 427 F.3d 1136, 1140 (8th Cir. 2005). However, courts have long recognized the "automobile exception" to the Fourth Amendment. *United States v. Wells*, 347 F.3d 280, 287 (8th Cir. 2003); *see generally Carroll v. United States*, 267 U.S. 132, 158-59 (1925). "The so-called 'automobile exception' permits police to conduct a warrantless search of an automobile if, at the time of the search, they

have probable cause to believe that the vehicle contains contraband or other evidence of a crime." *Kennedy*, 427 F.3d at 1140-41 (citations omitted); *see also United States v. Soderman*, 983 F.3d 369, 375 (8th Cir. 2020) ("Although a warrantless search usually constitutes a per se Fourth Amendment violation, the automobile exception to the Fourth Amendment's warrant requirement permits the warrantless search or seizure of a vehicle by officers possessing probable cause to do so"); *United States v. Schackleford*, 830 F.3d 751, 753 (8th Cir. 2016) ("Probable cause to believe that an automobile contains contraband or evidence of criminal activity as long been held to justify a warrantless search of the automobile and seizure of the contraband."). The burden is on the Government to justify warrantless searches. *Carter v. United States*, 729 F.2d 935, 940 (8th Cir. 1984).

In *Wells*, the Eighth Circuit Court of Appeals articulated probable cause for searching a vehicle during a lawful traffic stop:

> "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir.2000). . . . "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). "[W]hen police officers have probable cause to believe there is contraband inside an automobile that has been stopped on the road, the officers may conduct a warrantless search of the vehicle, even after it has been impounded and is in police custody." *Michigan v. Thomas*, 458 U.S. 259, 261, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982) (per curiam).

347 F.3d at 287-88.

"Probable cause for the stop and search of this vehicle may be based on the collective knowledge of all law enforcement officers involved in the investigation and need not be based solely upon information within knowledge of the officer(s) on the scene

13

if there is some degree of communication." *United States v. Rowe*, 878 F.3d 623, 628 (8th Cir. 2017) (citing *United States v. Shackleford*, 830 F.3d 751, 753-54 (8th Cir. 2016)). Further, "[t]he collective knowledge of law enforcement officers conducting an investigation is sufficient to provide reasonable suspicion, and the collective knowledge can be imputed to the individual officer who initiated the traffic stop when there is some communication between the officers." *United States v. Rederick*, 65 F.4th 961, 966 (8th Cir. 2023) (quoting *United States v. Thompson*, 533 F.3d 964, 969 (8th Cir. 2008)); *see also United States v. Jacobsen*, 391 F.3d 904, 907 (8th Cir. 2004) ("The patrol officer himself need not know the specific facts that caused the stop . . . [r]ather, the officer need only rely upon an order that is founded on reasonable suspicion.").

Additionally, "[a]ny infirmities in the search warrant application are irrelevant so long as the search of the vehicle fell within the automobile exception to the search warrant requirement." *United States v. Holleman*, 743 F.3d 1152, 1158 (8th Cir. 2014); *see also United States v. Maccani*, 526 F.Supp.3d 420, 453 (N.D. Iowa 2021) ("The Eighth Circuit Court of Appeals has plainly held that the automobile exception may be applied to justify a search when the warrant for that search is later found to be deficient.").

### b. Application

Officer Bailey testified that he and his partner were briefed prior to the controlled drug purchase involving Defendant on February 28, 2024. As part of that briefing, Officer Bailey was informed that Defendant would be in the CS's vehicle, and he was given a description of the CS's vehicle. Officer Bailey was in communication with investigators surveilling the controlled drug purchase. Officer Bailey heard the other investigators' discussion of the controlled drug purchase that occurred in the Dollar Tree parking lot on February 28, 2024, and also monitored the discussion of the drugs being moved to the rear of the CS's vehicle after the controlled transaction. Therefore, prior to the traffic stop, Officer Bailey and his partner knew that a drug deal had occurred and

knew specifically where in the CS's vehicle that the drugs were located. (Bailey Hr'g Test. at 36-37.) Indeed, Officer Bailey testified that, even without the search warrant, he had probable cause to stop and search the vehicle based on the other officers' surveillance of the drug deal in the Dollar Tree parking lot, the information overheard on the CS's wire, and knowing the exact location of the drugs in the CS's vehicle. (*Id.* at 39-40.) Accordingly, I find that the traffic stop was constitutional. Based on the totality of the circumstances, I find that Officer Bailey and his partner had a particularized and objective basis to suspect criminal activity was afoot and stop the CS's vehicle. *See Pounds*, 70 F.4th at 1108. Further, in addition to the collective knowledge of the officers involved, *see Rederick*, 65 F.4th at 966, Officer Bailey and his partner had knowledge from their briefing and from communications with other officers that the Defendant and the CS had been involved in a controlled drug purchase and they knew exactly where in the CS's car that the drugs were located. Based on this knowledge, Officer Bailey and his partner had probable cause to search the CS's vehicle, as they had concrete reasons to believe that the CS's vehicle contained contraband, *i.e.*, methamphetamine located in the CS's trunk under the spare tire. *See Kennedy*, 427 F.3d at 1140. Therefore, resolution of the various issues raised by the parties, such as Defendant's standing, the validity of the search warrant, and the CS's consent to the search are, for all practical purposes, unnecessary because law enforcement had probable cause to both stop and search the CS's vehicle. Accordingly, I recommend that the motion to suppress be denied.

### 2. *Does Defendant have standing to challenge the search?*

#### a. *Relevant law*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "Fourth Amendment rights are personal and may not be asserted

vicariously." *United States v. Davis*, 943 F.3d 1129, 1132 (8th Cir. 2019) (citing *Alderman v. United States*, 394 U.S. 165, 174 (1969)). "'An individual asserting Fourth Amendment rights "must demonstrate that he [or she] personally has an expectation of privacy in the place searched, and that his [or her] expectation is reasonable.'" *United States v. Anguiano*, 795 F.3d 873, 878 (8th Cir. 2015) (quoting *United States v. Barragan*, 379 F.3d 524, 529 (8th Cir. 2004), in turn quoting *Minnesota v. Carter*, 525 U.S. 83, 88 (1998)); *see also Davis*, 943 F.3d at 1132 ("Only those with a reasonable expectation of privacy in the place searched may bring a Fourth Amendment challenge."). In general, "[a] defendant who 'fails to prove a sufficiently close connection to the relevant places or objects searched [ ] has no standing to claim that they were searched . . . illegally.'" *Anguiano*, 795 F.3d at 878 (quoting *United States v. Gomez*, 16 F.3d 254, 256 (8th Cir.1994)). In the context of vehicle searches, "[a] passenger who asserts 'neither a property nor a possessory interest' in a vehicle lacks a reasonable expectation of privacy in that vehicle. *Davis*, 943 F.3d at 1132 (citing *Rakas v. Illinois*, 439 U.S. 128, 148, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)); *see also United States v. Lindsey*, 43 F.4th 843, 847 (8th Cir. 2022) ("As a general matter, mere passengers . . . who have no ownership rights in a vehicle lack standing to challenge a search of the vehicle."). Factors for determining standing include:

> ownership, possession and/or control of the area searched or item seized; historical use of the property or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case.

*Anguiano*, 795 F.3d at 878 (quoting *Gomez*, 16 F.3d at 256). "Even where a search is unlawful, a passenger without [an ownership or possessory] interest in the vehicle normally cannot challenge its search or suppress resulting evidence." *Davis*, 943 F.3d at 1132.

16

However, the passenger of a vehicle without an ownership or possessory interest may "still contest the lawfulness of his [or her] own detention and seek to suppress evidence as the fruit of his [or her] illegal detention." *Lindsey*, 43 F.4th at 847 (quoting *United States v. Green*, 275 F.3d 694, 699 (8th Cir. 2001)). In other words, because a passenger is "seized" within the meaning of the Fourth Amendment, he or she "may challenge the constitutionality of the stop." *Brendlin v. California*, 551 U.S. 249, 251 (2007); *see also United States v. Arnold*, 835 F.3d 837 n.6 (8th Cir. 2016) (providing that a passenger may challenge the constitutionality of a vehicle stop).

### b. Application

Here, Defendant did not own the CS's vehicle. He had no possessory interest or control over the CS's vehicle. There is no evidence that Defendant had a history of using the CS's vehicle or regulating access to the vehicle. There is no evidence that Defendant had a subjective anticipation of privacy in the CS's vehicle or an objective expectation of privacy in the vehicle. The circumstances surrounding Defendant being a passenger in the vehicle were that Defendant traveled with the CS to Cedar Rapids to buy methamphetamine and after obtaining the methamphetamine planned to ride back to his residence in Tipton, Iowa. Such circumstances do not suggest a privacy interest in the vehicle. Thus, based on the factors outlined in *Anguiano* and Defendant being a "mere passenger" without ownership rights in the CS's vehicle, I find that Defendant has no standing to challenge the search of the CS's vehicle. *See Lindsey*, 43 F.4th at 847.

Defendant argues he has standing to challenge the search of the vehicle because the CS's vehicle was not stopped for a traffic violation, but rather, because of the search warrant pertaining to him and any car he might be a passenger in. (Doc. 38 at 3.) "A passenger in a motor vehicle has standing to challenge the stop of that vehicle." *United States v. Wheat*, 278 F.3d 722, 726 (8th Cir. 2001) (citing *United States v. Lyton*, 161 F.3d 1168, 1170 (8th Cir. 1998)); *see also United States v. Ameling*, 328 F.3d 443, 446

n.3 (8th Cir. 2003) (providing that even though an individual does not own a vehicle, "as a passenger [he or] she may still challenge the stop and detention and argue that the evidence should be suppressed as fruits of illegal activity") (quotation omitted). Thus, to the extent that Defendant is contesting the constitutionality of the stop, he has standing to challenge the stop.

"A traffic stop constitutes a seizure of [a] vehicle's occupants, including any passengers." *United States v. Hanel*, 993 F.3d 540, 543 (8th Cir. 2021) (alteration in original) (quoting *United States v. Sanchez*, 572 F.3d 475, 478 (8th Cir. 2009)). "For a traffic stop to be constitutional under the Fourth Amendment, it 'must be supported by reasonable suspicion or probable cause.'" *Id*. (quoting *United States v. Houston*, 548 F.3d 1151, 1153 (8th Cir. 2008)). "A law enforcement officer has reasonable suspicion when the officer is aware of 'particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed.'" *Id*. (quoting *Houston*, 548 F.3d at 1153, in turn quoting *United States v. Martin*, 706 F.2d 263, 265 (8th Cir. 1983)). "To determine if probable cause or reasonable suspicion existed, we look at what the officers 'reasonably knew at the time,' rather than looking back with the benefit of hindsight." *Id*. (quoting *United States v. Hollins*, 685 F.3d 703, 706 (8th Cir. 2012)).

Defendant focuses his argument on the search warrant as the reason for the stop. However, regardless of the search warrant, Officer Bailey and his partner had both reasonable suspicion and probable cause to stop the CS's vehicle. Indeed, Officer Bailey testified that he and his partner were briefed prior to the controlled drug purchase involving Defendant on February 28, 2024. As part of that briefing, Officer Bailey was informed that Defendant would be in the CS's vehicle, and he was given a description of the CS's vehicle. Officer Bailey was in communication with investigators surveilling the controlled drug purchase. Officer Bailey heard the other investigators' discussion of the

18

controlled drug purchase that occurred in the Dollar Tree parking lot on February 28, 2024, and also monitored the discussion of the drugs being moved to the rear of the CS's vehicle after the controlled transaction. Therefore, prior to the traffic stop, Officer Bailey and his partner knew that a drug deal had occurred and knew specifically where in the CS's vehicle that the drugs were located. (Bailey Hr'g Test. at 36-37.) Moreover, Officer Bailey testified that, even without the search warrant, he had probable cause to stop and search the vehicle based on the other officers' surveillance of the drug deal in the Dollar Tree parking lot, the information overheard on the CS's wire, and knowing the exact location of the drugs in the CS's vehicle. (*Id.* at 39-40.) Accordingly, I find that the traffic stop was constitutional. Because the stop was constitutional and Defendant was a "mere passenger" without ownership rights in the CS's vehicle, I find that Defendant lacks standing to challenge the search of the CS's vehicle. Therefore, I recommend that the motion to suppress be denied.

### 3. Was the search warrant valid?

If the Court does not agree with my conclusions regarding probable cause for the stop and search of the vehicle based on Officer Bailey's knowledge of the drug transaction, the search warrant may provide a basis for the search.

#### a. Relevant law

"The Warrant Clause of the Fourth Amendment requires that warrants (1) be issued by a neutral and detached magistrate, (2) contain a 'particular[ ] descri[ption of] the place to be searched, and the persons or things to be seized,' and (3) be based 'upon probable cause, supported by Oath or affirmation.'" *United States v. Skarda*, 845 F.3d 370, 375 (8th Cir. 2016) (quoting *United States v. Clyburn*, 24 F.3d 613, 617 (4th Cir. 1994), in turn quoting U.S. Const. amend. IV). "A magistrate judge may issue a search warrant 'upon a showing of probable cause to believe that the legitimate object of a search is located in a particular place.'" *Skarda*, 845 F.3d at 376 (quoting *Steagald v. United*

*States*, 451 U.S. 204, 213, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981)). "Probable cause exists when, viewing the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Reed*, 921 F.3d 751, 757 (8th Cir. 2019) (quoting *Illinois v. Gates*, 462 U.S. 213, 230, 238 (1983)); *see also United States v. Evans*, 4 F.4th 633, 636 (8th Cir. 2021) ("Probable cause is a fair probability that . . . evidence of a crime will be found in the location to be searched") (quoting *United States v. LaMorie*, 100 F.3d 547, 552 (8th Cir. 1996))). "In assessing whether a warrant is sufficiently particular, [courts] consider the purpose for which the warrant was issued, the nature of the items to which it is directed, and the total circumstances surrounding the case." *United States v. Ivey*, 91 F.4th 915, 918 (8th Cir. 2024) (citation omitted). The particularity requirement "is one of 'practical accuracy rather than a hypertechnical one.'" *Id*. (quoting *United States v. Schave*, 55 F.4th 671, 675 (8th Cir. 2022)). "Common sense" drives the inquiry into whether probable cause exists, and the ultimate determination cannot be "readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 231-32 (1983). "'[T]his practical and common-sensical standard' is based on 'the totality of the circumstances.'" *United States v. Zamora-Garcia*, 831 F.3d 979, 983 (8th Cir. 2016) (alteration in original) (quoting *Florida v. Harris*, 568 U.S. 237, 244 (2013)).

It is not this Court's place to determine whether affidavits supporting search warrants are supported by probable cause. "[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's determination of probable cause should be paid great deference by reviewing courts." *Gates*, 462 U.S. at 236 (citation and internal quotation marks omitted); *see also United States v. Hallam*, 407 F.3d 942, 948 (8th Cir. 2005) ("In reviewing the issuance of a warrant, a district court need not make a *de novo* inquiry into the existence of probable cause."). "The Fourth Amendment requires that the issuing 'magistrate had a substantial

basis for concluding that a search would uncover evidence of wrongdoing.'" *United States v. Maccani*, 49 F.4th 1126, 1130 (8th Cir. 2022) (quoting *Gates*, 462 U.S. at 236); *see also United States v. Johnson*, 848 F.3d 872, 876 (8th Cir. 2017) ("The role of a reviewing court is to ensure the magistrate issuing the warrant 'had a "substantial basis for concluding that probable cause existed"'") (quoting *United States v. Colbert*, 828 F.3d 718, 726 (8th Cir. 2016), in turn quoting *United States v. Garcia-Hernandez*, 682 F.3d 767, 771 (8th Cir. 2012))). "When the issuing magistrate relies solely on a supporting affidavit in determining probable cause, . . . 'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'" *United States v. Saddler*, 19 F.4th 1035, 1039 (8th Cir. 2021) (quoting *United States v. Roberts*, 975 F.3d 709, 713 (8th Cir. 2020)). "The issuing court's probable cause determination 'should be paid great deference by reviewing courts.'" *Johnson*, 848 F.3d at 876 (quoting *United States v. Brewer*, 588 F.3d 1165, 1170 (8th Cir. 2009)).

The substantial basis standard requires that the issuing judge "make a practical and common-sense" determination, based only on the circumstances set forth in the affidavit, that the totality of the circumstances point to "a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Kail*, 804 F.2d 441, 444 (8th Cir. 1986) (quoting *Gates*, 462 U.S. at 238). "Not only may an issuing judge 'draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant, . . . law enforcement officers may make reasonable inferences in preparing affidavits in support of a warrant.'" *United States v. Brackett*, 846 F.3d 987, 992 (8th Cir. 2017) (quoting *United States v. Thompson*, 210 F.3d 855, 860 (8th Cir. 2000)). "[T]here is no requirement that an affiant have first-hand knowledge of every allegation he includes in his affidavit." *United States v. Fiorito*, 640 F.3d 338, 346 (8th Cir. 2011). Conclusory statements, however, "made by affiants

fail to give the issuing magistrate a substantial basis for determining probable cause exists." *United States v. Summage*, 481 F.3d 1075, 1077-78 (8th Cir. 2007). "In addition to probable cause that contraband or evidence of a crime will be found, 'there must [also] be evidence of a nexus between the contraband and the place to be searched.'" *United States v. Randle*, 39 F.4th 533, 536 (8th Cir. 2022) (quoting *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000)). This requires "'a "nexus" between the evidence to be seized and the place to be searched, considering "the nature of the crime and the reasonable, logical likelihood of finding useful evidence."'" *Schave*, 55 F.4th at 676 (quoting *United States v. Smith*, 21 F.4th 510, 515 (8th Cir. 2021), in turn quoting *United States v. Johnson*, 848 F.3d 872, 878 (8th Cir. 2017)).

Defendant bears the burden of proving the warrant was issued without probable cause. *See Carter v. United States*, 729 F.2d 935, 940 (8th Cir. 1984) ("As a general rule, the burden of proof is on the defendant who seeks to suppress evidence") (citing *United States v. Phillips*, 540 F.2d 319 (8th Cir. 1976)); *United States v. McGuire*, No. CR 13-40058, 2013 WL 5516192, at *3 (D.S.D. Oct. 1, 2013) ("A movant seeking to suppress evidence under a regularly issued warrant has the burden to show that the warrant was issued without probable cause") (quoting *United States v. Sierra–Garcia,* 760 F. Supp. 252, 262 (E.D.N.Y. 1991)), *R. & R. adopted,* 2013 WL 6449893 (D.S.D. Dec. 10, 2013). "In doubtful or marginal cases, the resolution of the Fourth Amendment question should be determined to a large extent by the preference accorded to searches based upon warrants." *United States v. Leichtling*, 684 F.2d 553, 555 (8th Cir. 1982) (quoting *United States v. Christenson*, 549 F.2d 53, 55 (8th Cir. 1977)); *see also United States v. Ventresca*, 380 U.S. 102, 109 (1965) ("Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.").

### b. Application

The search warrant was issued by a neutral and detached state court judge. The search warrant also provided a particular description of the places to be searched and the things to be seized. Specifically, the search warrant identified the following vehicles and person to be searched: (1) Red 2000 Chevrolet Tahoe (including license plate, VIN, and registration information); (2) White 2007 Saturn Outlook (including license plate, VIN, and registration information); (3) "[a]ny vehicle that [Defendant] is found to currently or immediately before had been driving or riding in"[4]; and (4) Defendant's person (including photo of Defendant and Defendant's date of birth). (Def. Ex. B (Doc. 25-2) at 1.) Defendant was ultimately stopped in a 2010 Mercedes SUV belonging to the CS and not in either of the vehicles listed in the warrant. There is no dispute that Defendant was riding in the CS's Mercedes at the time of the stop. Rather, the dispute focuses on the breadth of a warrant authorizing law enforcement to search any vehicle Defendant is found in.

Among the items to be seized, the search warrant included "[m]ethamphetamine, marijuana, or any controlled substances as listed in Chapter 124 of the State Code of Iowa." (Id. at 2.) Finally, the search warrant affidavit contained he following information pertinent to the magistrate judge's finding of probable cause: (1) Defendant had been observed driving a black Dodge Caravan which was known to law enforcement to be used in drug trafficking; (2) Defendant was a known methamphetamine user and distributor and had pleaded guilty in the past to possession with intent to deliver methamphetamine; (3) in November 2023, surveillance evidence indicated that Defendant had provided another individual with methamphetamine which that individual sold in a

---

[4] The grammar here is a bit unorthodox, but no one contends it is indecipherable. I interpret it to say that law enforcement is permitted to search any vehicle they find Defendant in, or any vehicle that he was riding in or driving immediately before he is stopped.

controlled drug transaction; (4) an indicted federal defendant who had been in a relationship with Defendant for six years told law enforcement that Defendant had been involved in methamphetamine trafficking for the entirety of their six-year relationship; (5) the affiant noted that the Red Chevrolet Tahoe broke down in December 2023 and Defendant was driving the black Dodge Caravan; (6) a CS working with the Muscatine County Sheriff's Office identified Defendant as an individual the CS had purchased methamphetamine from; (7) at the time of the affiant presented the warrant affidavit to the magistrate, the CS had conducted two controlled drug transactions involving Defendant and was "working on arranging another transaction for methamphetamine in late-February"; (8) Defendant had been observed driving a white Saturn Outback; and (9) based on his general knowledge as a police officer, the affiant knew that drug traffickers often keep controlled substances intended to be sold in their vehicles. (Def. Ex. A (Doc. 25-1) at 4-8, 11.)

Considering the information contained in the affidavit outlined above, and bearing in mind that I am to give "great deference" to the issuing judge's probable cause determination, *see Gates*, 462 U.S. at 236, and I am not required to "make a *de novo* inquiry into the existence of probable cause," *see Hallam*, 407 F.3d at 948, here, the judge had a substantial basis and made "a practical and common-sense" determination, based on the totality of the circumstances, *see Kail*, 804 F.2d at 444, that "a search would uncover evidence of wrongdoing." *See Maccani*, 49 F.4th at 1130 (quotation omitted). While greater particularity in the warrant affidavit may have been preferred, under the standards of reviewing a neutral magistrate's issuance of a search warrant, I find there is enough particularity in the warrant affidavit to conclude that the issuance of the warrant in this case did not violate the Fourth Amendment. Indeed, the affidavit provided that the CS was in the process of arranging a third controlled transaction for "late-February," which indicates the day that the officer applied for the search warrant, as the search

warrant was issued on February 28, 2024, the same date as the third controlled transaction. Thus, it appears that law enforcement was in the process of setting up a controlled transaction which would involve a vehicle, but they did not know what vehicle Defendant would be using. The wording of the search warrant to include "[a]ny vehicle that [Defendant] is found to currently or immediately before had been driving or riding in," suggests that law enforcement wanted the search warrant to cover the uncertainty about the vehicle, not about whether Defendant would have contraband.

Further, courts have found search warrants involving "any vehicles" to be valid. For example, in *United States v. Miles*, 86 F.4th 734 (7th Cir. 2023), defendant argued that a search warrant extended to "any vehicles on [the] premises" was "overly broad." *Id*. at 742 (alteration in original). In finding the warrant valid, the Seventh Circuit Court of Appeals noted that:

> Prior to obtaining the warrant, officers were unable to determine who lived at the Brouse Avenue residence or anticipate which vehicles would be on the premises during the warrant's execution. Nevertheless, they had observed [a suspected drug trafficker] using different vehicles to travel to and from the residence on two occasions. During both controlled buys, [the suspected drug trafficker] gave the CS meth while the two sat inside a vehicle at the Brouse Avenue residence.

*Id*. Because the officers had not identified the owner of the Brouse Avenue residence and had observed the suspected drug trafficker using different vehicles to conduct two controlled drug purchases, the Seventh Circuit found that the search warrant "was as specific as the officers' knowledge allowed under the circumstances and it did not allow officers to search for items that were unlikely to yield evidence of the crime." *Id*. at 743 (quotations and brackets omitted). The Seventh Circuit also determined that:

> because [the suspected drug trafficker] handed the CS meth immediately after exiting the house in both controlled buys, the officers reasonably believed that the residence's owner was [the suspected drug trafficker's]

meth source. On these facts, it is reasonable to infer that there was a fair probability that evidence of drug trafficking would be found in any car on the Brouse Avenue residence.

*Id*. The Seventh Circuit concluded that "the warrant did not violate the Fourth Amendment." *Id*.; *see also United States v. Carillo-Diaz*, 361 Fed. App'x 707, 709 (8th Cir. 2010 (per curiam) (unpublished) ("The affidavit supporting the warrant demonstrated that much—if not all—of the drug trafficking activity involving motor vehicles did not involve vehicles owned by Juan or Lucia Carrillo–Diaz. In light of this fact, it was reasonable for the government to seek a warrant not limited to vehicles owned by Juan or Lucia Carrillo–Diaz. In addition, the warrant was limited in scope by limiting searches only to vehicles parked on the property. We hold the district court did not err by suppressing the evidence on the grounds the warrant was facially overbroad"); *People v. Williams*, 34 N.Y.S. 528, 530-31 (N.Y 3d Dep't 2016) ("[W]e find without merit defendant's contention that the search warrant authorizing the search of "any vehicle [defendant] may be in or operating" was too general to provide a sufficiently particular description of the vehicle to be searched. . . . Here, we find that the description of the vehicle was sufficiently particular and readily ascertainable, given that the only vehicle that could be searched was the one that defendant was in or operating, if any, at the time that the search warrant was executed") (second alteration in original); *State v. Iwatate*, 120 P.3d 260, 268 (Hawaii Ct. App. 2005) ("We agree with the circuit court that 'the authorization in the search warrant to search any personal, rental, or borrowed vehicle that Iwatate [was] operating or occupying was not unconstitutionally overbroad, and was sufficiently particularized.' This authorization was based on probable cause that 'Iwatate would be in possession of ice, and would be transporting it in any number of different vehicles in which he was either the operator or an occupant.' Conclusion of Law No. 6.

26

Given the surrounding facts and circumstances, a more particularized description of the vehicle Iwatate would be using to transport ice would have been difficult.").

Lastly, Defendant's argument that the execution of the search warrant in Linn County instead of Cedar County is of no avail, as such a technical deficiency is not a Fourth Amendment violation. *See United States v. Faulkner*, 826 F.3d 1139 (8th Cir. 2016). First, under Iowa law, "[u]pon a finding of probable cause for grounds to issue a search warrant, the magistrate shall issue a warrant . . . commanding that peace officer forthwith to search the named person, place, or thing *within the state*." Iowa Code section 808.4 (emphasis added). In *State v. Groff*, the Iowa Supreme Court addressed § 808.4 as follows:

> Under [§ 808.4] a magistrate may direct a peace officer to search a person, place, or thing "within the state" for the specified property.
>
> Prior to the revision of the criminal code, the issuance of search warrants was governed by section 751.5, The Code 1977. That section provided:
>
>> If the magistrate is satisfied from his examination of the applicant, and of other witnesses, if any, and of the allegations of the information, of the existence of the grounds of the application, or that there is probable cause to believe their existence, he shall issue a search warrant, signed by him with his name of office, directed to any peace officer *in the county*, commanding him forthwith to search the person or place named for the property specified, and bring said property before him.
>
> (Emphasis added.) According to Professors Yeager and Carlson, "The drafting subcommittee voted to delete 'in the county' from former § 751.5, to avoid any county-boundary limitation to searches." J. Yeager and R. Carlson, Iowa Practice § 893 (1979).
>
> The deletion of the words "in the county" from former section 751.5 and the inclusion of the words "within the state" in present section 808.4 lead us to believe that the legislature intended magistrates to have the authority

27

to issue search warrants for property located outside the county of their appointment.

323 N.W.2d 204, 213 (Iowa 1982). In *Faulkner*, the defendant argued that the "installation of the GPS tracking device in an area beyond the geographical limits set forth in the warrant transformed the installation into a warrantless." 826 F.3d at 1145. The Eighth Circuit disagreed and determined that:

> the warrant authorizing installation of the GPS tracking device was approved by a neutral magistrate in Hennepin County, Minnesota. The installation authorized by the warrant was executed within the specified time frame. The warrant application particularly described Faulkner's Avalanche by year, make, model, color, license plate, and VIN number. The CRI gave the officers credible tips that Faulkner was dealing heroin. The technical deficiency that the warrant specified a certain county for placement of the GPS device when it was actually placed in a neighboring county might be a violation of state law, but it is not a Fourth Amendment violation under these circumstances. *United States v. Freeman*, 897 F.2d 346, 350 (8th Cir. 1990) (holding no Fourth Amendment violation for technical violation in execution of the warrant because it did not implicate probable cause or the description with particularity of the place to be searched, and, the violation was not deliberate); *United States v. Bach*, 310 F.3d 1063, 1066 (8th Cir. 2002) (state law violations were not a basis for suppression without a Fourth Amendment violation). . . . The officers testified at trial and the suppression hearing that placing the device in Ramsey County was a mistake, but their primary goal was simply to place the tracking device on a mobile target wherever they could find it. The district court found this testimony credible. . . . Thus, Faulkner's arguments about the geographical location of the vehicle or any possible state law violations are without merit.

*Id*. at 1145-46.

Here, under Iowa law, neutral judges are authorized to issue search warrants "within the state" and they are not bound or limited to issuing search warrants within a specific county. *See* Iowa Code Section 808.4; *Groff*, 323 N.W.2d at 213. Additionally,

28

even though the instant search warrant listed Cedar County and the warrant was executed in neighboring Linn County, because the search warrant was issued by a neutral judge with probable cause and particularity, the execution of the search warrant in Linn County was not a Fourth Amendment violation. *See Faulkner*, 826 F.3d at 1145-46. Additionally, the evidence suggests that, because Defendant was a resident of Cedar County and Defendant's primary vehicles were located in Cedar County, the warrant application predicted the warrant would be executed in Cedar County. The decision to stop the CS's vehicle in neighboring Linn County appears to be a post-warrant decision that does not undermine the validity of its execution.

### 4.     Did the CS consent to the search?

#### a.     Relevant law

Consent is an exception to the Fourth Amendment's prohibition on warrantless searches and "'may be given either by the suspect or by some other person who has common authority over, or sufficient relationship to, the item to be searched.'" *United States v. Williams*, 97 F.4th 579, 581 (8th Cir. 2024) (quoting *United States v. James*, 353 F.3d 606, 613 (8th Cir. 2003)). "To show that a person consented to a search, the [g]overnment must demonstrate by a preponderance of the evidence that consent was 'the product of an essentially free and unconstrained choice.'" *United States v. Magallon*, 984 F.3d 1263, 1280 (8th Cir. 2021) (quoting *United States v. Garcia-Garcia*, 957 F.3d 887, 895 (8th Cir. 2020), in turn quoting *United States v. Cedano-Medina*, 366 F.3d 682, 684 (8th Cir. 2004)). "[A] 'warrantless search is valid if conducted pursuant to the knowing and voluntary consent of the person subject to a search.'" *Garcia-Garcia*, 957 F.3d at 892 (quoting *Cedano-Medina*, 366 F.3d at 684). "The issue turns not on the defendant's subjective state of mind, but on whether the officer reasonably believed the defendant consented." *Id*. (quoting *United States v. Espinoza*, 885 F.3d 516, 523 (8th Cir. 2018)).

29

### b. *Application*

At the outset, I note that because I have determined that Defendant lacks standing to challenge the search of the CS's vehicle, a determination of whether the CS consented to the search of the CS's vehicle may be unnecessary. I have determined that Defendant has standing to challenge the stop of the vehicle. Therefore, if Court determines that the stop was unconstitutional and the search was somehow the fruit of that stop, it may wish to address the consent argument.

The Government's consent argument is slightly complicated by the fact that the CS was not made aware that law enforcement intended to stop and search the CS's vehicle after the February 28, 2024 controlled transaction was completed. While the CS may have been surprised by the decision to conduct a traffic stop, the fact that a search occurred was consistent with law enforcement's prior practice of searching the vehicle after a controlled purchase. Because the CS was acting at the direction of law enforcement and had previously in two prior separate controlled drug purchases cooperated fully with law enforcement's directives, as will be discussed in more detail below, it is reasonable for the officers to believe that the CS consented to the search of the CS's vehicle. Detective Bohling testified that "it [was] conveyed to the CS that the CS is essentially working on behalf of law enforcement during the time that she's being directed by law enforcement."

Given that the CS was unaware that law enforcement was going to stop the CS's vehicle, it is difficult to see how the CS could have expressly consented to the stop. Nor was this the typical procedure in the two prior controlled transactions. Nevertheless, Detective Bohling testified that, when the CS was first engaged by law enforcement, they discussed various procedures required in a controlled drug purchase involving the CS. In particular, the CS agreed that the CS would be willing to consent to a vehicle search before and after every transaction, be willing to consent to a full body search of CS's

person before and after every transaction and agree to wear a body transmitter to allow law enforcement to listen to the controlled transaction. Detective Bohling also testified that the CS signed documentation acknowledging her agreement to the vehicle searches and searches of the CS's person before and after each controlled drug transaction.[5] The CS also acknowledged that the CS would be working for law enforcement at law enforcement's direction. In controlled transactions involving the CS on both February 5, 2024 and February 13, 2024, the CS was strip searched and the CS's vehicle was searched before and after the controlled transaction. On February 28, 2024, the instant controlled transaction, prior to the controlled drug purchase, the CS was searched and the CS's vehicle was searched. The CS also consented to a GPS tracking device being placed on the CS's vehicle. Detective Bohling also directed the CS to place the methamphetamine obtained from Defendant during the controlled transaction in the trunk of the CS's vehicle under the spare tire. Finally, Detective Bohling explained the surprise stop of the CS (along with a traffic stop of Defendant's source) was intended to prevent "giving up" the CS. (Bohling Hr'g Test. at 29.) While this might have been intended to protect the investigation, this decision also seems calculated to protect the CS. Thus, it was more reasonable for law enforcement to infer the CS's consent that, while different than prior searches, was designed to avoid alerting others to the CS's cooperation.

Additionally, under these circumstances, whether the CS "consented" to the stop and search is a somewhat awkward way to frame the issue presented. If the CS had been an undercover law enforcement officer, the Court would probably not be hearing about whether the undercover officer consented to being pulled over. That is because,

---

[5] The Government did not provide the agreement as an exhibit, but having found Detective Bohling credible and the history of the CS's person and vehicle being searched before and after controlled transactions on February 5, 2024 and February 13, 2024, I presume the CS agreed to and consented to the procedure of searches of the CS's vehicle and the CS's person before and after each controlled transaction the CS was involved in.

presumably, an order to pull over would be within the scope of undercover officer's job duties. Here the question is similar: whether the officers ordering the CS to pull over could reasonably conclude such a direction was within the scope of what the CS agreed to do. Because the CS was acting at the direction of law enforcement on February 28, 2024 during the controlled drug transaction, and given the CS's consent to the procedures associated with a controlled transaction, and given the history of the CS consenting to searches of the CS's person and the CS's vehicle before and after controlled transactions on February 5, 2024, February 13, 2024, and prior to the February 28, 2024 controlled transaction, I find that the officers reasonably believed that they had the CS's consent to stop the vehicle to permit a search of the CS's vehicle following the controlled drug purchase. Put another way, I find it reasonable for law enforcement to conclude that requiring CS to pull over for a surprise traffic stop was within the scope of the duties the CS had engaged to perform.

### 5. *The good faith exception under* **Leon**

#### a. *Relevant law*

Under the good faith exception articulated in *United States v. Leon*, even if a reviewing court determines substantial evidence to issue a warrant is absent, the court should not suppress evidence seized pursuant to the search warrant if the officers executing the search warrant acted in objectively reasonable reliance on the issuance of the warrant by a neutral magistrate or judge. 468 U.S. 897, 922 (1984); *United States v. Houston*, 665 F.3d 991, 994-95 (8th Cir. 2012). "In making this determination, we ask 'whether a reasonably well-trained officer would have known that the search was illegal despite a judge's issuance of the warrant.'" *United States v. Lopez-Zuniga*, 909 F.3d 906, 909 (8th Cir. 2018) (quoting *United States v. Jackson*, 784 F.3d 1227, 1231 (8th Cir. 2015)).

Under the "good-faith exception," if a law enforcement officer's reliance on a warrant was objectively reasonable, the evidence seized pursuant to an invalid warrant will not be suppressed. *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007). *Proell* noted that *Leon* identified four scenarios where it is not objectively reasonable for the executing officer to rely on a warrant issued by a magistrate:

> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) when the warrant is "so facially deficient" that no police officer could reasonably presume the warrant to be valid.

*Id*. at 431 (citing *Leon*, 468 U.S. at 923; *United States v. Puckett*, 466 F.3d 626, 630 (8th Cir. 2006)).

*Leon* explained that "[s]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a judge normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." 468 U.S. at 922 (quotations omitted). Nevertheless, "in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." *Id*. at 922-23 (footnote omitted). "For the *Leon* exception to apply when the warrant is based on evidence obtained through a Fourth Amendment violation, [law enforcement's] prewarrant conduct must have been 'close enough to the line of validity to make the officers' belief in the validity of the warrant objectively reasonable.'" *United States v. Cannon*, 703 F.3d 407, 413 (8th Cir. 2013) (quoting *United States v. Conner*, 127 F.3d 663, 667 (8th Cir. 1997)). If the prewarrant conduct is clearly illegal, however, the exception does not apply. *Cannon*, 127 F.3d at 413.

33

### b.    Application

None of the four scenarios contemplated by *Leon* apply here.  Indeed, there is no allegation or evidence that the affidavit in support of the search warrant contained any false statements or that the issuing magistrate judge was misled in any way.  There is no allegation or evidence that the issuing magistrate judge "wholly abandoned" their judicial role in issuing the search warrant.  As discussed above, based on the affidavit in support of the warrant application, the issuing magistrate judge had a substantial basis and made "a practical and common-sense" determination, based on the totality of the circumstances, that "a search would uncover evidence of wrongdoing"; and therefore, the affidavit was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  *See Kail*, 804 F.2d at 444; *Maccani*, 49 F.4th at 1130; *Proell*, 485 F.3d at 431.  Indeed, the warrant application suggests that law enforcement was in the process of setting up a third controlled transaction involving Defendant, the CS, and some type of vehicle.  Because law enforcement was unsure what vehicle Defendant would be using, the wording of the search warrant to include "[a]ny vehicle that [Defendant] is found to currently or immediately before had been driving or riding in," suggests that law enforcement wanted the search warrant to cover the uncertainty about the vehicle, not about whether Defendant would have contraband.  Finally, there is no allegation or evidence that the warrant is "so facially deficient" that a police officer could not reasonably presume that the warrant was valid.

Moreover, as discussed above, I find that the traffic stop was legal, and Officer Bailey and his partner had probable cause to search the CS's vehicle.  Nothing on this record shows that any of Officer Bailey's and his partner's conduct related to the traffic stop or search of the CS's vehicle was "clearly illegal."  Instead, the record shows that the traffic stop and vehicle search never strayed from, or far from, the line of validity.  *See Cannon*, 127 F.3d at 413.  Thus, I find that Officer Bailey's and his partner's conduct

34

was close enough to the line of validity to justify law enforcement's belief that the search warrants were objectively reasonable. *See id*. Accordingly, as an alternative, I recommend that Defendant's motion to suppress be denied under the *Leon* good faith exception.

### 6.     *The inevitable discovery exception*

#### a.     *Relevant law*

"Where information is discovered after police violate the Fourth Amendment, the evidence should not be suppressed '[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means.'" *United States v. Sallis*, 920 F.3d 577, 582-83 (8th Cir. 2019) (alteration in original) (quoting *Nix v. Williams*, 467 U.S. 431, 444 (1984)). Under the inevitable discovery doctrine, "'the government must prove by a preponderance of the evidence: (1) that there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation.'" *United States v. Smith*, 21 F.4th 510, 517 (8th Cir. 2021) (quoting *United States v. Conner*, 127 F.3d 663, 667 (8th Cir. 1997)).

#### b.     *Application*

Here, in the absence of any alleged police misconduct (and none is alleged in this case) there is a reasonable probability that the methamphetamine seized from the CS's vehicle would have been discovered by lawful means, as law enforcement would have searched the CS's vehicle and obtained the methamphetamine from the CS following the controlled drug transaction but at a later time, perhaps after CS dropped off Defendant. In effect, law enforcement was actively pursuing a substantial, alternative line of investigation, although it substantially overlapped with the traffic stop and search pursuant to the warrant. In other words, even if the traffic stop and/or the warrant are

found unconstitutional, officers were engaged in a controlled drug purchase utilizing the CS which would have resulted in seizure of the methamphetamine as part of the routine search of the CS's vehicle at the conclusion of the entire sequence of events. That would have occurred in the absence of the traffic stop and/or warrant-based search. Accordingly, as an alternative, I recommend that Defendant's motion to suppress be denied under the inevitable discovery doctrine.

### 7. *Defendant's Statements*

Defendant claims his statements are the fruit of the poisonous tree. The Government barely addresses the issue. Evidence obtained as a result of an unconstitutional search or seizure must be suppressed as well as any evidence later discovered to be an illegal "fruit of the poisonous tree." *Segura v. United States*, 468 U.S. 796, 804 (1984) (citing *Wong Sun v. United States*, 371 U.S. 471, 484 (1963)). "Any evidence secured through an unreasonable, hence illegal, search and seizure may not be used in a federal prosecution, nor may the fruit of such tainted evidence be admitted against the defendant whose privacy rights were originally violated." *United States v. Conner*, 948 F.Supp. 821, 829 (N.D. Iowa 1996) (citing *Weeks v. United States*, 232 U.S. 383 (1914); *Wong Sun*, 371 U.S. at 484-88). However, the evidence must be suppressed only if the "illegality is at least a but-for cause of obtaining the evidence." *United States v. Riesselman*, 646 F.3d 1072, 1079 (8th Cir. 2011) (quoting *United States v. Olivera-Mendez*, 484 F.3d 505, 511 (8th Cir. 2007)).

Here, the record is devoid of evidence of what Defendant said, when he said it, where he said it, to whom he said it, whether the statements were post-*Miranda,* or whether they were somehow attenuated. If the Court decides the stop was constitutional based on the warrant and/or other probable cause, then there is no poisonous tree and Defendant's only asserted basis for suppression of the statements disappears and the statements should not be suppressed. If, however, the Court decides the search and/or

36

seizure of the drugs was unconstitutional, then the Government has not refuted the assertion that the statements are the fruit of the poisonous tree, and the statements should be suppressed.

### 8. *Summary*

As a "mere passenger" without ownership rights in the CS's vehicle, Defendant lacks standing to challenge the search of the CS's vehicle and the motion to suppress should be denied. *See Lindsey*, 43 F.4th at 847. Defendant has standing to challenge the validity of the stop to the extent it was based on the warrant. As for the validity of the warrant, the issuing judge had a substantial basis and made a practical and common-sense determination, based on the totality of the circumstances that "a search would uncover evidence of wrongdoing"; and therefore, the issuance of the warrant in this case did not violate the Fourth Amendment. *See Maccani*, 49 F.4th at 1130 (quotation omitted). Based on the fact that CS was acting at the direction of law enforcement during the February 28, 2024 controlled drug transaction, and given the CS's consent to the procedures associated with a controlled transaction, and given the history of the CS consenting to searches of the CS's person and the CS's vehicle before and after controlled transactions on February 5, 2024, February 13, 2024, and prior to the February 28, 2024 controlled transaction, the officers reasonably believed that they had consent from the CS to search the CS's vehicle following the February 28, 2024 controlled drug purchase. Regardless of the validity of the search warrant and/or whether the CS consented to the search of the CS's vehicle, law enforcement had probable cause to both stop and search the CS's vehicle based on the controlled drug purchase and knowing that the methamphetamine was located in the CS's trunk under the spare tire; therefore, the motion should be denied. Alternatively, the motion should be denied under both *Leon* and the inevitable discovery doctrine. Accordingly, for all the foregoing reasons, I recommend that the motion to suppress be denied.

## IV. CONCLUSION

For the reasons set forth above, I respectfully recommend the District Court **deny** Defendant's Motion to Suppress. **(Doc. 24.)**

Objections to this Report and Recommendation in accordance with 28 U.S.C. Section 636(b)(l) and Fed. R. Crim. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Crim. P. 59. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise,* 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** at Cedar Rapids, Iowa, this 17th day of December, 2024.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa