IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | No. 24-CR-0070-CJW-MAR |
| Plaintiff, | ) | |
| | ) | DEFENDANT'S OBJECTIONS |
| vs. | ) | TO REPORT AND |
| | ) | REOMMENDATION RE: |
| SHANE ROBERT McDOWELL, | ) | MOTION TO SUPPRESS |
| | ) | |
| Defendant. | | |

Defendant Shane Robert McDowell objects as set forth below to the Report and Recommendation (Dkt. 39), recommending denial of Defendant McDowell's Motion to Suppress (Dkt. 24).

TABLE OF CONTENTS

I.   FACTUAL BACKGROUND..............................................2

II.  DEFENDANT McDOWELL HAS STANDING TO
     CHALLEGE THE SEARCH AS THE SEARCH WAS BASED
     ON THE WARRANT.......................................................2

III. THE PORTION OF THE SEARCH WARRANT FOR ANY
     VEHICLE IN WHICH MR. McDOWELL MAY BE FOUND
     WAS ISSUED WITHOUT PROBABLE CAUSE..............5

IV.  THE STOP OF THE VEHICLE AND RESULTING
     SEARCH WERE  BECAUSE OF THE WARRANT, NOT
     BECAUSE OF ANY CLAIM OF PROBABLE CAUSE
     BASED ON THE SUSPECTED CONTROLLED BUY.....8

> V. THERE IS NO EVIDENCE THAT THE CI CONSENTED TO THE SEARCH..............................................................9
>
> VI. THE SEARCH WARRANT WAS LIMITED TO ITEMS FOUND IN CEDAR COUNTY. EXECUTION IN LINN COUNTY WAS OUTSIDE OF THE SCOPE OF THE WARRANT....................................................................11
>
> VII. THE *LEON* GOOD FAITH EXCEPTION DOES NOT APPLY.......................................................................15
>
> VIII. THE INEVITABLE DISCOVERY EXCEPTION DOES NOT APPLY.......................................................................17
>
> IX. MR. McDOWELL'S STATEMENTS MUST ALSO BE SUPPRESSED..............................................................18

## I. FACTUAL BACKGROUND

The factual background set forth in the Report and Recommendation is largely accurate. The dispute in this case centers around the legal conclusions to be made from those facts.

## II. DEFENDANT McDOWELL HAS STANDING TO CHALLENGE THE SEARCH AS THE SEARCH WAS BASED ON THE WARRANT

Defendant objects to the Report and Recommendation to the extent that it concludes that Defendant McDowell does not have standing to challenge the search as a passenger in the vehicle. The

2

Report of Officer Bailey (Dkt. 25-3 - Ex. 3) unambiguously states that the stop was based on the warrant, nothing else.

It is undisputed in the evidence that the stop of the vehicle in which Mr. McDowell was a passenger and resulting search was because of the search warrant, particularly the portion of the warrant that authorized the search of any vehicle that Mr. McDowell was driving or was a passenger in and the search of Mr. McDowell's person. Officer Austin Bailey testified that he and his partner stopped the vehicle because of the warrant. *See also* Defendant's Exhibit C (Dkt. 25-3). They did not observe any traffic violation that would have justified a traffic stop. Accordingly, without Mr. McDowell's presence in the vehicle to trigger that portion of the warrant, the vehicle would not have been stopped and searched. The warrant was aimed at Mr. McDowell, it was not aimed at the driver of the vehicle.

The case law regarding standing that has been cited is not on point. For example, *United States v. Lindsey*, 43 F.4th 843 (8th Cir. 2022), states the proposition that "[a]s a general matter, mere passengers . . . who have no ownership rights in a vehicle lack standing to challenge a search of the vehicle." *Id.* at 847 (citation omitted). *See*

3

Case 1:24-cr-00070-CJW-MAR    Document 42    Filed 01/02/25    Page 3 of 20

also *United States v. Davis*, 943 F.3d 1129 (8th Cir. 2019), *United States v. Anguiano*, 795 F.3d 873 (8th Cir. 2015), and *United States v. Barragan*, 379 F.3d 524 (8th Cir. 2004). However, all of those cases involved traffic stops based on the driver violating traffic laws. *See Lindsey*, 43 F.4th at 846-847 (officers looking for driver of vehicle suspected of having handgun, with knowledge that driver did not have a valid license, and also observed that vehicle was not displaying any license plate; rejecting Lindsay's argument because "Officer Woodward had probable cause to detain the vehicle and Lindsay, a passenger, based upon traffic violations alone");[1] *Davis*, 943 F.3d at 1130 (stop of vehicle in which Davis was a passenger for speeding); *Anguiano*, 795 F.3d at 874 (traffic stop for speeding and tinted windows); *Barragan*, 379 F.3d at 526 (traffic stop for no front license plate, following too closely, obstructed temporary tag, speeding, and a vision obstruction hanging from rear view mirror). In other words, the traffic stops and subsequent searches at issue in those cases were aimed at the driver of the vehicle and the defendant was an incidental passenger.

---

[1] In *Lindsey*, the Eighth Circuit did not specifically rule on the standing issue, but rather decided that the search was based on probable cause.

## III. THE PORTION OF THE SEARCH WARRANT FOR ANY VEHICLE IN WHICH MR. McDOWELL MAY BE FOUND WAS ISSUED WITHOUT PROBABLE CAUSE

Defendant objects to the conclusion set forth in Section III(B)(3) of the Report and Recommendation that the search warrant was supported by probable cause. The Report and Recommendation misses the point of the argument, which is that execution of the warrant was limited to one specific provision in the warrant and that specific provision was not supported by probable cause.

The portion of the Search Warrant that was executed that is at issue is the portion for "Any vehicle that SHANE McDOWELL is found to currently or immediately before had been driving or riding it." (Dkt. 25-2 - Ex. B). A search warrant must be supported by probable cause. Probable cause means "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

The Search Warrant Application discusses various pieces of evidence of Mr. McDowell being involved in the distribution of methamphetamine. (Dkt. 25-1 - Ex. A). The Application also sets forth generalized information about the habits of drug traffickers, none of

which relates to utilizing different vehicles. (Dkt. 25-1 - Ex. A at pp. 8-11).

However, there was no probable cause set forth in the Search Warrant Application to believe that any contraband or other relevant evidence would be found in "Any vehicle that SHANE McDOWELL is found to currently or immediately before had been driving or riding in." That portion of the Warrant is not limited to any specific vehicles previously associated with Mr. McDowell. It is not limited to vehicles found in any particular place or at any particular time. It is not limited to vehicles owned or operated by any other specific person.

The Warrant authorized law enforcement to stop any vehicle at any time that Mr. McDowell is driving or is a passenger within, with nothing further required. Mr. McDowell could be driving[2] or be a passenger in a myriad of vehicles for a myriad of reasons. Further, the black 2010 Mercedes Benz SUV that Mr. McDowell was a passenger in at the time of the traffic stop is not mentioned anywhere in the

---

2There is nothing in the Application suggesting that Mr. McDowell was a suspended or barred driver or is otherwise prohibited from operating a vehicle. In any event, at the time of the traffic stop at issue, Mr. McDowell was a passenger.

Application as a vehicle possibly associated with Mr. McDowell or with any drug or other illegal activity.

Additionally, the suspicion that Mr. McDowell might use another, unspecified, vehicle for drug activity in late February of 2024 is not supported by sufficient evidence. This suspicion appears based on evidence that Mr. McDowell had driven a black 2006 Dodge Grand Caravan associated with drug activity on October 30, 2023, had driven the 2007 Saturn Outlook (not associated with any drug activity), and that his red Chevy Tahoe (sometimes used for drug activity) had been observed disabled for two short periods of time in December of 2023. The Warrant was issued on February 28, 2024. There was no information in the Application that Mr. McDowell's Tahoe was still disabled or that the Tahoe was generally and frequently unreliable. There was absolutely no evidence that, in reasonable proximity to February 28, 2024, that Mr. McDowell was using any vehicle (except for perhaps the red Tahoe) for any illegal activity.

Of great concern, the broad language of the Warrant authorized the stop of a vehicle owned and operated by a completely innocent person merely because Mr. McDowell is a passenger. "The underlying

7

Case 1:24-cr-00070-CJW-MAR    Document 42    Filed 01/02/25    Page 7 of 20

measure of adequacy in the description is whether given the specificity in the warrant, a violation of personal rights is likely." *United States v. Caves*, 890 F.2d 87, 92 (8th Cir.1989) (citations omitted). The broad language of this portion of the Warrant makes it likely that the personal rights of an innocent person giving Mr. McDowell a ride would be violated.

The Application for the Search Warrant did not provide probable cause to allow law enforcement to stop <u>any</u> vehicle which Mr. McDowell was driving or riding as a passenger. The methamphetamine found during the search (and Mr. McDowell's later statements) must be suppressed.

## IV. THE STOP OF THE VEHICLE AND RESULTING SEARCH WERE BECAUSE OF THE WARRANT, NOT BECAUSE OF ANY CLAIM OF PROBABLE CAUSE BASED ON THE SUSPECTED CONTROLLED BUY

Defendant objects to the conclusion in the Report and Recommendation that there was probable cause for the search based on the suspected controlled buy that Mr. McDowell and the CI had just engaged in with Mr. McNairy.

The report of Austin Bailey, the officer stopping the vehicle, states that the stop and the search were because of the warrant. *See* Defendant's Exhibit C (Dkt. 25-3). There is absolutely no mention of the suspected controlled buy or any assertion that the stop and search were based, in whole or in part, upon any suspected controlled buy.

## V. THERE IS NO EVIDENCE THAT THE CI CONSENTED TO THE SEARCH

Defendant McDowell objects to the conclusion in the Report and Recommendation that the CI consented to the search. That conclusion is based on evidence that the CI consented to post-controlled buy searches of her person and vehicle and would have known that she and her vehicle would be searched after the February 28, 2024, controlled buy.

The evidence, however, was clear that the CI had no knowledge that the vehicle would be stopped by Cedar Rapids Police Officers and the vehicle searched at that time in the presence of Mr. McDowell.[3]

---

[3] The Government argued in its Brief (Dkt. 32-1), at 18, that "officers had CS1's consent to initiate a traffic stop on his/her vehicle and to conduct a search of it." However, the evidence from Tanner Boling was undisputed that the CI had no advance knowledge that a traffic stop would be conducted. Thus, the CI could not have consented to the traffic stop.

9

There was also no evidence that the CI expressly consented to a search of her vehicle at the scene prior to the search. In the prior controlled buys, the searches occurred after the CI and her vehicle were away from the controlled buy and away from any sources or other suspects relating to the transaction. To the extent that there is an argument that the CI impliedly consented to a search of her vehicle at the conclusion of the controlled buy, there was no evidence that her consent extended to a search as part of an unannounced traffic stop *and in the presence of one of the targets of the controlled buy*. "To show that a person consented to a search, the Government must demonstrate by a preponderance of the evidence that consent was 'the product of an essentially free and unconstrained choice.'" *United States v. Garcia-Garcia*, 957 F.3d 887, 895 (8th Cir. 2020) (citation omitted). The CI could reasonably have expected and believed that her consent to search was limited to searches after the transaction was fully completed and outside the presence and without the knowledge of any potential suspects. The CI's reasonable expectation would be that the officers would take care to minimize the risk of others learning of her cooperation in the controlled buys. In other words, the CI did not impliedly consent to a search of her

vehicle at the time and place it was searched and, most importantly, in the presence of Mr. McDowell. It was not the CI's "free and unconstrained choice" for the search to be conducted at the time and place, and under the circumstances in which the search was conducted.

## VI. THE SEARCH WARRANT WAS LIMITED TO ITEMS FOUND IN CEDAR COUNTY. EXECUTION IN LINN COUNTY WAS OUTSIDE OF THE SCOPE OF THE WARRANT

Defendant McDowell also objects to the conclusion of the Report and Recommendation that the search warrant could be executed outside of Cedar County. The Search Warrant Application, after identifying the vehicles to be searched, as well as the request for the search of the person of Shane McDowell, clearly states "In Cedar County, there is now certain property, namely:." (Dkt. 25-1 - Ex. A at p. 1). The Application then lists various things including "Methamphetamine, marijuana, or any controlled substances as listed in Chapter 124 of the State Code of Iowa." *Id.* at p. 2, ¶ 7. The Search Warrant, as issued by the Magistrate, contains the same language. (Dkt. 25-2 - Ex. B).

A magistrate is authorized under Iowa law to issue a warrant to search property located in a different county. *See State v. Groff*, 323

N.W.2d 204, 213 (Iowa 1982) (holding that language of Iowa Code § 808.3 that a magistrate may authorize a "search of the named person, place, or thing within the state for the property specified," in light of the change from prior law authorizing a warrant "directed to any peace officer in the county" authorized a Washington County magistrate to issue a warrant for the search of property partially located in Washington County and partially in Iowa County). *Groff* is distinguishable in that the warrant at issue identified the specific real property to be searched, the location of which is fixed. There was also sufficient evidence presented creating probable cause that relevant evidence would be found in the search with respect to both portions of the property.

Here, while the Search Warrant authorized the search of vehicles, two identified with specificity and also the problematic "any vehicle" that Mr. McDowell was driving or riding in, the Search Warrant was specifically limited to vehicles and property to be seized physically located in Cedar County. "The authority to search granted by any warrant is `limited to the specific places described in it and does not extend to additional or different places.'" *United States v. Pennington*,

287 F.3d 739, 744 (8th Cir.2002) (quoting *United States v. Alberts*, 721 F.2d 636, 639 (8th Cir.1983)). The issuing Magistrate would have understood and intended the Search Warrant to be limited to items found within Cedar County as requested in the Application and as set forth on the face of the Warrant. The Warrant was not broad enough to authorize the search of vehicles located outside of Cedar County, including the vehicle located in Linn County in which Mr. McDowell was a passenger.

*United States v. Faulkner*, 826 F.3d 1139 (8th Cir. 2016), is distinguishable. In that case, the warrant authorized placement of a GPS tracking device on a specific vehicle and stated that the vehicle was located in Hennepin County. The GPS device was installed on the vehicle while it was in Ramsey county. A major feature of the Eighth Circuit's analysis was that the warrant described a specific vehicle upon which the GPS device was to be placed. *See Faulkner*, 826 F.3d. at 1145-46.

In contrast, the warrant here did not describe a specific vehicle to be searched with respect to the portion of the warrant for any vehicle in which Mr. McDowell may be driving or riding in. The warrant

specifically stated that it was for "certain property" "In Cedar County." The plain language of the warrant did not encompass property, including contraband, outside of Cedar County.

*Faulkner* notes that there was no Fourth Amendment violation under the circumstances of that case. *See Faulkner*, 826 F.3d at 1146. *Faulker* cites *United States v. Freeman*, 897 F.2d 346, 350 (8th Cir. 1990), as "holding no Fourth Amendment violation for technical violation in execution of the warrant because it did not implicate probable cause or the description with particularity of the place to be searched, and, the violation was not deliberate." *Freeman* involved a question of the authority of the requesting officer to obtain the search warrant.

In Mr. McDowell's case, all three of those concerns are implicated. First, it implicates probable cause because the warrant application and warrant are limited to setting forth probable cause that contraband and other items of evidentiary value will be found in Cedar County.[4] While there is mention of Linn County in the warrant application, there is no specific allegation that items subject to the warrant will be found in

---

4As previously discussed, there is no probable cause for the "any vehicle" portion of the warrant.

Linn County. Second, as discussed above, the warrant is expressly limited to the search of items found in Cedar County. Further, the "any vehicle" language at issue does not rise to the level of specificity of description as the vehicle at issue in *Faulkner*. Third, the evidence at hearing demonstrated that the violation was deliberate. The task force officers involved in directing Officer Austin to make the traffic stop in Linn County were certainly aware of the language of the warrant limiting the searches to Cedar County. They made a deliberate choice to execute the search warrant in Linn County instead of waiting until the vehicle had entered Cedar County. As Investigator Tanner Boling explained, the decision was made for simultaneous stops on the CI's vehicle and the vehicle driven by the source of the methamphetamine.

### VII. THE *LEON* GOOD FAITH EXCEPTION DOES NOT APPLY

Defendant McDowell objects to the conclusion that the good-faith exception pursuant to *United States v. Leon*, 468 U.S. 897 (1984), applies. That exception applies "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope, even if the warrant is subsequently

invalidated." *Id.* at 920-21. The exception does not apply in four circumstances, including when the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" and when "a warrant [is] so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid." *Id.* at 923.

First, as previously discussed, the warrant was not executed "within its scope" as it was executed in Linn County when the warrant was limited to execution in Cedar County.

Second, as previously discussed, the warrant application was so lacking as to probable cause with respect to "any vehicle" in which Mr. McDowell was driving or a passenger in, that it would be entirely unreasonable for an officer to believe that probable cause existed. No reasonable officer could conclude that "any vehicle" which Mr. McDowell is driving or is a passenger in sufficiently describes a place where there is probable cause to believe that contraband would be found.

Third, as previously discussed, the "any vehicle" portion of the warrant so fails to particularize the place to be searched such that an executing officer cannot reasonably presume it to be valid." "Any vehicle" does not describe any particular vehicle with sufficient specificity.

Accordingly, the *Leon* good-faith exception does not apply.

## VIII. THE INEVITABLE DISCOVERY EXCEPTION DOES NOT APPLY

Defendant McDowell objects to the conclusion that the inevitable discovery exception applies. That conclusion is based on the assertion that, if the traffic stop and search had not occurred, the vehicle would have been searched and the methamphetamine discovered when the vehicle returned to Cedar County.

For inevitable discovery to apply, "the government must prove by a preponderance of the evidence: (1) that there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct; and (2) that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation." *United States v. Conner*, 127

F.3d 663, 667 (8th Cir. 1997). Inevitable discovery in this case fails on the second prong of this test.

The government was not also actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation. There was only one investigation. The traffic stop using the warrant was triggered by the controlled buy and a desire to recover the methamphetamine believed to be in the vehicle as a result of the controlled buy. It is one line of investigation, not an alternative line of investigation. The only difference is the timing of the search.

### IX. MR. McDOWELL'S STATEMENTS MUST ALSO BE SUPPRESSED

Defendant McDowell also objects to the conclusion of the Report and Recommendation that Mr. McDowell's statements should not be suppressed as fruit of the poisonous tree. Following the search of the vehicle, Mr. McDowell was transported to the Cedar Rapids Police Department where he made incriminating statements. (Dkt. 25-4 - Ex. D). Those statements must be suppressed as fruit of the poisonous tree. The phrase "fruit of the poisonous tree" refers to indirect or secondary evidence obtained as a result of a prior illegality. *See Nardone v. United*

*States*, 308 U.S. 338, 341 (1939) (coining the phrase for the first time). Under the doctrine, the "fruits" of the prior illegality are excluded if they were an exploitation of that prior illegality. *See Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963). Thus, the doctrine operates as an extension of the exclusionary rule. As the resultant finding of the methamphetamine from the illegal search of the vehicle must be suppressed, Mr. McDowell's subsequent statements must also be suppressed as they flowed from the illegal search.

For the above stated reasons, Defendant Shane Robert McDowell respectfully requests the Court to sustain his objections to the Report and Recommendation (Dkt. 39) and to grant his Motion to Suppress (Dkt. 24) in its entirety.

Respectfully submitted,

__/s/ Webb L. Wassmer_____
Webb L. Wassmer  AT0008343
*Wassmer Law Office PLC*
5320 Winslow Road
Marion, IA 52302
Tele: (319) 210-4288
wassmerlaw@yahoo.com
Attorney for Defendant
Shane Robert McDowell

CERTIFICATE OF SERVICE

I certify that on January 2, 2025, I electronically filed the foregoing with the Clerk of Court using the ECF system which will send notification of such filing to the following:

    Jared Manternach, SAUSA
    Dillan Edwards, AUSA

    **By: _____/s/ Webb Wassmer_____**
    **Webb Wassmer**